IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MAXINE SNYDMAN, | : |
| | : Case No.: 2:10-cv-1344 (MMB) |
| Plaintiff, | : |
| | : *Civil Action* |
| v. | : |
| | : |
| AMPER, POLITZINER & MATTIA, LLP, | : |
| | : |
| Defendant. | : |

**DEFENDANT'S MEMORANDUM IN
SUPPORT OF ITS MOTION FOR SANCTIONS**

Defendant Amper, Politziner & Mattia, LLP ("Amper") respectfully submits this memorandum in support of its motion for sanctions of Plaintiff Maxine Snydman ("Plaintiff") and her counsel, Alan B. Epstein, Esq. ("Mr. Epstein") for their failure to comply with a court order and their bad faith conduct in connection with the court-ordered Settlement Conference held on February 1, 2011.

**PRELIMINARY STATEMENT AND STATEMENT OF FACTS**

On or about June 30, 2010, roughly three months after Plaintiff filed her Complaint, Mr. Epstein verbally relayed Plaintiff's initial demand of $150,000 to settle her lawsuit. Amper did not respond to that demand at that time. Mr. Epstein did not advise defense counsel that Plaintiff's demand was its last or final offer or that it was non-negotiable. (Saloman Decl., ¶¶ 2).[1]

On July 26, 2010, the parties attended an Initial Scheduling Teleconference with The Honorable Michael M. Baylson, U.S.D.J. During that call, Judge Baylson suggested that the parties consider participating in a Settlement Conference before The Honorable David R.

---

[1] In support of its motion, Amper relies upon the Declaration of Mark A. Saloman, Esq. ("Saloman Decl."), submitted herewith and incorporated herein by reference.

Strawbridge, U.S.M.J. Defense counsel stated that Amper was willing to attend a Settlement Conference with Judge Strawbridge. Mr. Epstein stated that Plaintiff was not interested in participating in a Settlement Conference because written discovery had not yet been exchanged. (Saloman Decl., ¶¶ 4-6). On or about August 2, 2010, Amper responded to Plaintiff's initial settlement demand by serving an Offer of Judgment in the amount of $23,265.89 upon Plaintiff. (Saloman Decl., ¶¶ 7).

After written discovery was exchanged between the parties, the parties attended a second teleconference with Judge Baylson on or about October 8, 2010. During that call, the Court again asked if the parties were interested in attending a Settlement Conference. Defense counsel again confirmed that Amper was willing to attend a Settlement Conference. Mr. Epstein stated that he needed to consult with his client. (Saloman Decl., ¶¶ 8, 9).

By email dated November 23, 2010, Judge Strawbridge's deputy clerk confirmed that she had spoken with all counsel and that both parties had agreed to participate in a Settlement Conference. (Saloman Decl., ¶¶ 10 and Exhibit 1). Judge Strawbridge issued a detailed Settlement Conference Order on December 6, 2010, which scheduled the Settlement Conference to commence on January 13, 2011. (Saloman Decl., ¶¶ 11 and Exhibit 2).

Judge Strawbridge subsequently issued an Amended Settlement Conference Order on January 5, 2011 (collectively referenced with the December 6, 2010 Order as the "Orders"), which re-scheduled the Settlement Conference to commence on February 1, 2011. (Saloman Decl., ¶¶ 12 and Exhibit 3). The Orders also state the duties and responsibilities of each party and their counsel:

> The Court fully expects that the parties have a serious interest in pursuing settlement. Prior to the conference, but not later than **January 18, 2011,** counsel for plaintiff is to set out to defendant a written good faith demand. . . . The Court

2

expects the parties to be fully prepared to discuss all issues relevant to the settlement process.

(Saloman Decl., Exhs. 2 and 3).

Contrary to her obligation under the Court's Orders, Plaintiff failed to provide a written good faith demand to Amper by January 18, 2011. (Saloman Decl., ¶¶ 13 and Exh. 3). Plaintiff offered no explanation why it failed to comply with this provision of the Order. (Saloman Decl., ¶¶ 13).

In advance of the Settlement Conference and consistent with Judge Strawbridge's Orders, Amper prepared and submitted a Settlement Memorandum and an *Ex Parte* Settlement Memorandum on January 26, 2011. In its Settlement Memorandum, Amper observed that Plaintiff failed to provide a written good faith demand to defense counsel by January 18, 2011. (Saloman Decl., ¶¶ 14, 15).

Upon information and belief, Judge Strawbridge then spoke with Plaintiff's counsel, Nancy Abrams, Esq. of Mr. Epstein's office, on or about January 31, 2011. Judge Strawbridge initiated this call because Plaintiff's January 27 settlement memo did not follow the format required by the Court's Orders. (Saloman Decl., ¶¶ 16). During that call, Ms. Abrams did not advise the Court that Plaintiff's original settlement demand was firm and non-negotiable.

On February 1, 2011, defense counsel traveled from Newark, New Jersey to Philadelphia to attend the Settlement Conference. Amper Managing Partner Jay Weinstein also prepared for, traveled to, and attended the conference. (Saloman Decl., ¶¶ 17).

Judge Strawbridge began the Conference by informing the parties of the general utility of settlement. The parties were then separated into different rooms and each side spent time alone with Judge Strawbridge. Several hours later, Judge Strawbridge informed defense counsel and

Mr. Weinstein that Plaintiff refused to engage in any negotiation concerning her original settlement demand. (Saloman Decl., ¶¶ 18, 19).

Defense counsel immediately advised Judge Strawbridge that it believed that Plaintiff's conduct evidenced bad faith because, despite numerous opportunities to do so, Mr. Epstein never advised defense counsel—or the Court—at any time prior to February 1, 2011 that Plaintiff's initial pre-discovery settlement demand was non-negotiable. Defense counsel then requested that the Court consider sanctioning such conduct because, had Mr. Epstein made Plaintiff's true position known to the Court or defense counsel in advance of February 1, Amper certainly would not have agreed to incur legal fees and costs waste Mr. Weinstein's time, or that of the Court, with what have been known to be a fruitless exercise. Judge Strawbridge did not sanction Plaintiff or her counsel *sua sponte*, but permitted Amper to file a motion seeking such relief. (Saloman Decl., ¶¶ 20).

## ARGUMENT

This Court is authorized to impose appropriate sanctions through its own inherent power, application of *Fed.R.Civ.P.* 16(f), and in accordance with 28 U.S.C. §1927. Based upon the various forms of misconduct of Plaintiff and her counsel, sanctions are appropriate under any one—or all—of these authorities.

I.   **SANCTIONS ARE APPROPRIATE DUE TO THE BAD FAITH CONDUCT OF PLAINTIFF AND HER COUNSEL.**

   A.   **Sanctions Are Appropriate Under *Fed.R.Civ.P.* 16(f)(1)(B).**

Federal Rule of Civil Procedure 16(f)(1)(B) authorizes the imposition of sanctions if a party or party's attorney is substantially unprepared to participate in a pretrial conference or fails to participate in that conference in good faith. Courts within and beyond this jurisdiction have found that a lack of "good faith" warrants sanctions in a number of situations comparable to the

4

one at bar, including where a party attended a settlement conference with no intent to negotiate or reach settlement.

The district court's finding of a lack of good faith in *Karahuta v. Boardwalk Regency Corp.*, 2007 WL 2825722 (E.D. Pa. 2007) is illustrative. There, like here, "[counsel] knew what to expect at a settlement conference, yet he engaged in actions that violated the Court's Settlement Conference Order by: (1) not providing Plaintiff with a settlement offer for a specific dollar amount before the settlement conference; (2) attending the settlement conference despite the high unlikelihood of a settlement and failing to notify the Court thereof; (3) failing to participate in good faith settlement negotiations before the settlement conference; and (4) bringing as Defendant's only representative at the conference a biased corporate employee with extremely limited authority to settle the case instead of the Defendant's Director of Litigation." *Id*. at * 4 (citing *Pitman v. Brinker Int'l, Inc.,* 2003 U.S. Dist. LEXIS 26202, *11-12 (D. Ariz. September 30, 2003)). Magistrate Judge Perkin further explained that "[i]f a settlement is possible, it is imperative that both plaintiff and defendant arrive at a settlement conference with an open mind and a genuine willingness to meaningfully discuss the strengths and weaknesses of each party's case." *Karahuta*, at * 4 (citing *Pitman* at *11). The court then imposed sanctions under Rule 16(f)(1)(B) because the defendant did not notify it beforehand that a settlement conference at this time would be futile, thereby "wast[ing] the limited time, financial resources and energies of the Court and Plaintiff." *Id*. at *6.

A similar conclusion was reached in *Nick v. Morgan's Foods, Inc.,* 99 F.Supp.2d 1056 (E.D. Mo. 2000), in which the district court imposed sanctions due to the defendant's failure to participate in good faith in court-ordered mediation. The court had issued an order referring the case to ADR, and mandating that the process be conducted in compliance with specific

requirements. Pursuant to these requirements, both parties were to submit a memorandum presenting a summary of the disputed facts and their position on liability and damages, at least seven days prior to the mediation. Further, all parties were required to attend and participate in good faith. Defendant failed to submit the required memorandum. During the ADR conference, moreover, plaintiff attempts to settle were rejected without a counteroffer by defendant. The court noted that "the rules and orders governing ADR are designed to prevent abuse of the opponent, which can and does occur when one side does not participate in good faith." *Id.* at 1062. It further reasoned that when a party agrees to participate in the settlement process in good faith, the court is entitled to rely on that representation because "[i]mplicit in the concept of good faith participation is the assurance that the parties will participate in ADR in accordance with the Court's order." *Id.* (citing *Raad v. Wal-Mart Stores, Inc.*, 1998 WL 272879, at *6 (D.Neb. May 6, 1998)). The court thus imposed sanctions because the defendant's bad faith conduct resulted in the "waste of plaintiff's time, plaintiff's counsels' time, the neutral's time and the Court's time." *Id.* at 1061-62.

Similarly, in *Guillory v. Domtar Industries Inc.*, 95 F.3d 1320 (5th Cir. 1996), the Fifth Circuit found a lack of good faith by defendant even though defendant had previously informed the court that it believed settlement possibilities were doubtful and defendant increased its initial settlement offer by 100 percent. Defendant nonetheless evidenced bad faith because it waited until the settlement conference to state for the first time that it had never believed settlement was a realistic possibility. The court reflected on these statements, concluding that "[a]s the settlement conference progressed, it became apparent that [defendant] did not intend to make any substantial contribution to a settlement fund, and that [it] had never intended to do so." *Id.* at 1334. The district court pointed out that defendant could have informed the court of its true

position at any time before the settlement conference and the court would have canceled the conference. Sanctions were imposed because the court "[could not] allow parties to waste the court's dispute resolution assets by pretending to support settlement while never intending to settle the case." *Id*. *See also In re Novak*, 932 F.2d 1397, 1404-06 (11th Cir.1991) ("At a time when the federal courts and judges—which are a scarce dispute resolution resource, indeed—are straining under the pressure of an ever-increasing caseload, we simply cannot permit litigants to waste the courts' assets, not to mention those of their adversaries, in this manner.").

This authority exemplifies "good faith" and supports the conclusion that Plaintiff and her counsel did not act in good faith here. Indeed, Plaintiff and her counsel misled the Court and Amper into believing—for more than two months—that Plaintiff intended to participate in the Settlement Conference in good faith and with a serious interest in pursuing settlement. However, as in *Nick*, Mr. Epstein's failure to submit a good faith demand or include Plaintiff's June 30, 2010 demand in her Mediation Statement pursuant to the Court's Orders prove that Plaintiff was never interested in a good faith settlement dialog. Furthermore, Mr. Epstein failed to advise Amper or the Court that Plaintiff did not believe settlement was a realistic possibility; instead, Plaintiff and Mr. Epstein strung along the Court and Amper. *See Guillory,* 95 F.3d at 1334. Upon arriving at the February 1 Settlement Conference, the parties were immediately separated into different rooms to discuss settlement possibilities with Judge Strawbridge. After spending several hours this way, Judge Strawbridge informed Amper that Plaintiff refused to engage in any negotiation concerning her initial June 30, 2010 settlement demand. Thus, not only did Amper waste time and incur expense to attend the Conference, it sat for more than three hours until Plaintiff's obstructive position became clear.

Indeed, if Plaintiff "did not feel that [a settlement conference] could be fruitful and had no intention of participating in good faith, [she] had a duty to report its position to the Court and to request appropriate relief." *Nick,* at 1063. Mr. Epstein neglected to fulfill this duty, and his conduct in concealing Plaintiff's true position directly resulted in waste of Amper's assets in scheduling, preparing for, traveling to/from, and attending the February 1 Settlement Conference. The Court should, therefore, impose sanctions to make Amper whole. *Accord* Individual Policies and Procedures of District Judge Baylson, Para. B(12) ("Unexcused violations of Scheduling Orders are subject to sanctions under FED. R. CIV. P. 16(f), upon Motion or the initiative of the Court.").

Mr. Epstein's conduct may also be likened to attending a conference unprepared, thus warranting sanctions under Rule 16(f)(1)(B). In *Flaherty v. Dayton Elec. Mfg. Co.*, the court imposed costs on an attorney who was found to be substantially unprepared to participate in the settlement conference. In its reasoning, the court noted that "[i]t is…patently unfair to have the defendant incur costs and attorney's fees to prepare for and attend a conference at which little could be accomplished due to the fact that plaintiff's counsel was substantially unprepared." 109 F.R.D. 617, 619 (D. Mass.1986); *accord Guillory*, 95 F.3d at 1335 ("Refusal to make a bona fide offer at a scheduled settlement conference is an impairment to reaching settlement that can be likened to attending a conference unprepared.") (citing *Novak*, 932 F.2d at 1404-06) (discussing wastefulness of resources in the context of participants coming to settlement conferences unprepared)). Certainly failure to submit a demand to Amper as ordered by the Court basically tied Amper's hands and substantially impaired the proceeding. That conduct is worthy of sanctions.

## II. SANCTIONS ARE APPROPRIATE BECAUSE PLAINTIFF AND HER COUNSEL VIOLATED THE COURT'S ORDERS.

### A. Plaintiff and Mr. Epstein violated the Court's Orders by failing to: i) submit a written good faith demand; ii) provide information as required by the Orders; and iii) demonstrate a serious interest in pursuing settlement.

The authority of federal courts to impose sanctions upon parties and attorneys engaged in civil litigation who violate a court order pertaining to settlement negotiations is well established. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44 (1991) (federal courts may act pursuant to the Federal Rules of Civil Procedure, statutes, or their inherent power to "impose . . . submission to their lawful mandates" and sanction litigants and their counsel for violation of such orders); *accord Fleischmann Distilling Corp. v. Maier Brewing Co.,* 386 U.S. 714 (1967); *John T. v. Delaware City Intermediate Unit*, 318 F.3d 545, 552 (3d Cir. 2003); *Liberty Lincoln-Mercury v. Ford Motor Co.*, 134 F.3d 557, 568-69 (3d Cir. 1998). To award sanctions based on a violation of a court order, the United States Court of Appeals for the Third Circuit requires that the conduct at issue violate a clear and specific mandate of the court, giving fair notice of what conduct will risk contempt. *John T.,* 318 F.3d at 552; *Liberty Lincoln-Mercury*, 134 F.3d at 568-69.

Courts have wide discretion in fashioning compensatory sanctions for a party's failure to comply with an order. The limiting factor is that the sanctions "must not exceed the actual loss damages caused the offended party." *Gregory v. Depte*, 896 F.2d 31, 34 (3d Cir.1990); *see also Quinter v. Volkswagen of Am.*, 676 F.2d 969, 975 (3d Cir.1982); *accord Inst. for Motivational Living v. Doulus Inst. for Strategic Consulting, Inc.*, 110 Fed. Appx. 283, 289 (3d Cir. 2004) (compensatory "contempt award must relate to the actual loss (including fees and expenses) that flowed from the contemnor's violation"). "To make the wronged party whole, the Court may

compensate [that party] for any losses sustained due to disobedience, including lost business, legal fees incurred in bringing the contempt motions, and any expenses incurred while investigating, uncovering, and proving the contempt." *Bro-Tech Corp. v. Thermax, Inc.*, 2010 WL 147921 (E.D. Pa. 2010).

Here, the Court's December 6, 2010 and January 5, 2011 Orders established the parties' obligations concerning the Settlement Conference. In addition to requiring that both "parties have a *serious interest* in pursuing settlement," (emphasis added), the Orders further required that, "not later than **January 18, 2011,** counsel for plaintiff is to set out to defendant a written good faith demand." (Orders at 1) (bold in original). The Orders also directed the parties to "submit to the Court on or before **January 27, 2011**, a settlement memorandum" and articulated specific requirements for this memorandum. (Orders at 1) (bold in original).

Plaintiff and Mr. Epstein violated the simple language of these Orders in multiple ways. First, Plaintiff failed to submit a written demand as required by the Orders. Second, the "Mediation Statement" submitted by Plaintiff on January 27, 2011 omitted Plaintiff's June 30, 2010 demand. Rather it merely contained a calculation of potential damages to which Plaintiff might be entitled if she were to prevail at trial, thus obfuscating its position and hiding its initial offer. Third, Plaintiff's conduct, when taken as a whole, demonstrates that she did not have a serious interest in pursuing settlement.[2] As such, this Court should impose sanctions under any or all of the authorities discussed below.

The conduct of Plaintiff and her counsel satisfy both prongs of the above standard for sanctions for violations of a court order. First, the language of the Court's Orders unmistakably put Plaintiff on notice of what was expected of her. Further, the Orders unambiguously

---

[2] This requirement also incorporates the parties' obligation to proceed in good faith. Mr. Epstein's violation of this obligation to negotiate in good faith is further discussed in Part I of this Memorandum.

10

mandated the format, content, and due date for the both written demand and settlement memorandum. (Saloman Decl., ¶¶ 11, 12 and Exhs. 2 and 3). Second, Mr. Epstein's noncompliance is supported by clear and convincing evidence because his failure to deliver a written demand and include Plaintiff's initial demand in the Mediation Statement is beyond dispute. Indeed, by violating the Orders in this manner, it is reasonable to hold Plaintiff and her counsel to a heightened duty to participate in the Settlement Conference in good faith toward Amper and the Court. Yet, Mr. Epstein offered no compelling reason to account for his noncompliance. (Saloman Decl., ¶¶ 13).

Plaintiff also violated the Orders because she secretly harbored no interest in settlement and failed to pursue settlement in good faith on February 1. As stated above, Plaintiff agreed in November 2010—after consulting with Mr. Epstein—to participate in good faith in a Settlement Conference before Judge Strawbridge. The Court's Orders memorialized that agreement and required all parties to attend the Settlement Conference with a "serious interest in pursuing settlement." (Saloman Decl., ¶¶ 11, 12 and Exhs. 2 and 3). Yet, when the parties appeared before Judge Strawbridge on February 1, 2011, Plaintiff revealed for the first time that she, in fact, had no interest—let alone a "serious interest"—in pursuing settlement. (Saloman Decl., ¶¶ 19). Despite numerous opportunities to do so, moreover, Mr. Epstein never advised defense counsel or the Court at any time prior to 12:30 p.m. on February 1, 2011 that Plaintiff had no interest in pursuing settlement or that her initial settlement demand was non-negotiable. (Saloman Decl., ¶¶ 20).

Mr. Epstein's failure to comply with the Court's Orders caused direct and actual damage to Amper. Had Mr. Epstein made Plaintiff's true position known to the Court or defense counsel in advance of February 1, as was required by the Orders, Amper certainly would not have agreed

to incur legal fees and costs, waste Mr. Weinstein's time in scheduling, preparing for, traveling to/from, and attending the Settlement Conference, or the valuable time of the Court.

### B. Sanctions are warranted under Fed. Rule 16f(1)(C).

Plaintiff's and Mr. Epstein's violations of the Court's Orders are sufficient to warrant sanctions under Federal Rule of Civil Procedure Rule 16(f)(C), which empowers a court to impose sanctions where a party or party's attorney fails to obey a scheduling or pretrial order. Other courts have imposed sanctions in circumstances similar to those involved here. For example, in *Nick v. Morgan's Foods, Inc.,* the court sanctioned defendant for failing to comply with a settlement order requiring it to submit a settlement memorandum nearly identical to the one required by the order in the instant case. 99 F.Supp.2d at 1056. The court imposed sanctions because the result of this failure was "a waste of plaintiff's time, plaintiff's counsels' time, the neutral's time and the Court's time. *Id.*

Similarly, in *Karahuta v. Boardwalk Regency Corp.*, the court imposed sanctions based on actions that it found amounted to bad faith, including defendant's failure to submit a summary of its position in advance of the pre-trial conference. Taken together with defendant's conduct at the conference, the court found that defendant's failure to adequately notify its adversary of its position prior to the conference resulted in a waste of time and resources that warranted sanctions under Rule 16(f)(1)(C). 2007 WL 2825722, at *6; *accord Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385 (9th Cir. 1993) (upholding the imposition of attorney's fees and costs for a party's failure to have someone available by telephone with settlement authority, in violation of the court's pre-trial order). *See also Legault v. Zambarano*, 105 F.3d 24 (1st Cir. 1997) (imposing sanctions on a party whose failure to meet a court-set deadline resulted in violation of

a court order, even though such failure alone did not directly result in damage to the opposing party).

As discussed above, Plaintiff's and Mr. Epstein's noncompliance resulted in direct and foreseeable consequences in the form of monetary damage to Amper, thereby warranting the imposition of sanctions under Rule 16(f)(1)(C).

### III. SANCTIONS ARE APPROPRIATE UNDER 28 U.S.C. §1927.

Section 1927 gives the federal courts power to impose sanctions even in the absence of contempt. This statute specifically provides that costs, expenses, and attorneys' fees may be assessed against an attorney who "multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. §1927.

A multiplication of the proceedings sufficient to justify § 1927 sanctions ordinarily occurs when the attorney's conduct requires the scheduling of proceedings, the making of determinations, or the taking of other actions which the court deems were unnecessary. *See, e.g., Unique Concepts Inc v. Brown*, 115 F.R.D. 292 (S.D.N.Y. 1987). Even a lack of a finding of bad faith does not preclude an award of fees and costs pursuant to §1927. *See Plante v. Fleet Nat. Bank*, 978 F. Supp. 59 (D.R.I. 1997).

Here, Amper relied upon Plaintiff's several representations that she was willing to negotiate and participate in the Settlement Conference in good faith. Mr. Epstein represented to the Court that Plaintiff was willing to negotiate, memorialized by Judge Strawbridge's deputy clerk on November 23, 2010. (Saloman Decl., ¶¶ 10 and Exh. 1). Because Amper had not heard from Plaintiff or Mr. Epstein regarding settlement after Plaintiff refused to accept Amper's Offer of Judgment, Amper reasonably concluded that Plaintiff's sudden desire to participate in a settlement conference signified a departure from her initial position. As such, Amper agreed to

set and then reset a settlement conference date, expecting to engage in meaningful negotiations on February 1. Had Amper known Plaintiff's true intention, it would certainly not have engaged in a fruitless effort.

In line with the above holdings, this Court should consider the vast amount of resources that have now been wasted in orchestrating a futile settlement conference. Sanctions under §1927 are warranted in furtherance of the Court's "obligation . . . to exercise its disciplinary powers to deter such happenings in the future" and make Amper whole. *Warner Bros. Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1128 (2d Cir. 1989).

### IV. THE COURT HAS THE INHERENT POWER TO SANCTION PLAINTIFF AND HER COUNSEL.

It is well-settled that federal courts have the inherent power to sanction attorneys or parties who engage in abusive litigation practices. A district court "may assess attorney's fees against the responsible party . . . when a party shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order." *See Chambers*, 501 U.S. at 46 (internal citations omitted).

The Third Circuit has approved the utility of these inherent powers and their practical necessity where more traditional penalties (such as contempt and those under the Federal Rules of Civil Procedure) are inadequate to regulate the wide range of attorney misconduct. *Eash v. Riggins Trucking, Inc.*, 757 F2d 557, 566 (3d Cir. 1985) (holding that a district court had the inherent power to order an attorney to pay to the government the cost of impaneling a jury for one day as a sanction for the attorney's abuse of the judicial process).

As discussed above, Plaintiff's and Mr. Epstein's abusive litigation practices fall within the wide array of behavior that courts may sanction through use of their inherent power. This Court is not precluded from appealing to this power by the existence of other statutes or rules

which permit sanctions for the same conduct.  *Chambers,* 501 U.S. at 33.  As such, even if this Court chooses not to impose sanctions under either the federal rules or statutes discussed above, it may nonetheless do so pursuant to its inherent power to regulate the conduct of attorneys that appear before it.

## CONCLUSION

For the foregoing reasons, Amper respectfully requests that the Court grant its motion for sanctions and compel Plaintiff and/or her counsel to reimburse Amper in the amount of $20,321.68 for reasonable fees, costs, and lost time incurred in the scheduling, preparing for, traveling to/from, and attending the February 1, 2011 Settlement Conference, as well as those related to the drafting of this motion, consistent with Amper's accompanying certification of legal and other services rendered.  (Saloman Decl., ¶¶ 21).

Respectfully submitted,

PROSKAUER ROSE LLP

Dated: February 10, 2011

By: /s/ *Mark A. Saloman*
Marvin M. Goldstein
Mark A. Saloman (admitted *pro hac vice*)
Nausheen Rokerya
One Newark Center, 18th Floor
Newark, New Jersey  07102

SORINROYERCOOPER, LLC
Barry L. Cohen, Esquire
101 West Elm Street, Suite 220
Conshohocken, Pennsylvania 19428