### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MAXINE SNYDMAN** | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | **No. 2:10-cv-01344** |
| **EISNER AMPER (f/k/a AMPER,** | : | |
| **POLITZINER & MATTIA, LLP)** | : | |
| **Defendant** | : | |

### MEMORANDUM OF LAW IN SUPPORT OF THE RESPONSE OF PLAINTIFF MAXINE SNYDMAN TO DEFENDANT'S MOTION FOR SANCTIONS

## I.     INTRODUCTION

Defendant, Eisner Amper (f/k/a before a recent merger as Amper, Politziner & Mattia, LLP) ("Eisner Amper") one of the largest accounting and litigation services firms in the country, has filed the present motion against Plaintiff and her counsel in a blatantly transparent attempt to: demonstrate its control of the litigation process; push the Plaintiff into capitulated acceptance of an inadequate settlement offer; and improperly influence the Court's opinion of both the cogency of her claims and the good faith in which she and her counsel are conducting her pursuit of just compensation for the wrongs affected by her former employer.  As will be demonstrated in the statement of the applicable facts and discussion of the controlling legal principles herein, it is respectfully suggested that the Defendant's unfounded and improper litigation tactic must be rejected and its frivolous Motion must be denied.  It is further respectfully suggested that Plaintiff should be reimbursed for the

expense of the present response based upon an award of reasonable counsel fees for the time her attorneys spent responding to Defendant's frivolous Motion.

## II.    STATEMENT OF APPLICABLE FACTS

On or about March 26, 2010, Plaintiff Maxine Snydman ("Plaintiff" or "Snydman") filed a Complaint alleging violations of both the Age Discrimination in Employment Act ("ADA"), 29 U.S.C. §621, *et seq.* (based on the actions Defendant Eisner Amper in first reducing her work hours while maintaining a substantially younger employee as a full-time employee and later terminating her employment while retaining that same substantially younger employee) and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* (by improperly classifying her as an exempt employee and refusing to pay her overtime wages as mandated by the FLSA).

At the Initial Scheduling Teleconference with the Honorable Michael M. Baylson, Plaintiff's counsel suggested that a mediation conference might not be fruitful at that time because Plaintiff and her counsel had not been able to ascertain the full extent of Plaintiff's losses, including the number of overtime hours Plaintiff worked without proper compensation, and that they needed to conduct document discovery to ascertain the true measure of Plaintiff's damages [Declaration of Alan B. Epstein, Esquire ("Epstein Decl."), attached hereto as Exhibit "A" at ¶ 4]. In spite this lack of information, Plaintiff in good faith estimated her damages and included a detailed calculation in her Initial Disclosures as required by F.R.C.P. 26(a)(1). That calculation stated that

Plaintiff had suffered damages up to that date estimated to be $660,285.  A copy of Plaintiff's Initial Disclosures is attached hereto as Exhibit "B".

Notwithstanding this calculation of damages, Plaintiff's counsel, Alan B. Epstein ("Epstein"), orally conveyed a good faith offer to settle Plaintiff's claims in an amount of $150,000 (less than 25% of the estimated damages presented in the initial self-executing dosclosure) to Defendant's counsel, Mark A. Saloman, Esquire ("Saloman") [Epstein Decl., ¶ 5].  Thereafter, Mr. Saloman only responded to Plaintiff's settlement offer by filing with the Court an Offer of Judgment in the unexplained amount of $23,265.89, inclusive of all attorneys' fees and costs.  Epstein Decl. at ¶6.  *See also* Offer of Judgment, attached to the Declaration of Mark A. Saloman, Esquire as part of Exhibit "4" thereto.

At the conclusion of the paper discovery exchanges between the parties and before engaging in taking time consuming and expensive depositions, Plaintiff agreed to participate in a settlement conference before the Honorable David R. Strawbridge ("Judge Strawbridge").  Epstein Decl. at ¶7.  In preparation for that Settlement Conference, Plaintiff's counsel prepared a detailed Mediation Statement outlining Plaintiff's theory of the case and a detailed calculation of Plaintiff's damages based on the actual time records provided by Defendant. Epstein Decl. at ¶8; Declaration of Nancy Abrams, Esquire ("Abrams Decl."), attached hereto as Exhibit "C" at ¶ 2.  In an attempt to further settlement discussions, Plaintiff's counsel forwarded a copy of the Mediation Statement to Mr. Saloman, even though they were not required to do so.  Epstein Decl. at ¶9; *see also* Plaintiff's Mediation Statement and

3

transmittal letter attached to the Declaration of Mark A. Saloman, Esquire as part of Exhibit "4" thereto.  At that same time, Mr. Saloman submitted the Defendant's written statement to Plaintiff and Judge Strawbridge, merely reiterating its earlier positions on liability and damages and only again proffering its earlier filed Offer of Judgment as the basis for a potential settlement [Epstein Decl. at ¶11].  Mr. Saloman's articulated positions did not suggest that any movement from those earlier formed and stated positions would be undertaken or affected by the Defendant.

Because Plaintiff's offer of settlement had not changed from her earlier offer, Plaintiff did not retransmit that offer of settlement in writing to Defendants.  However, on January 31, 2011, in a telephone conversation with Judge Strawbridge, Ms. Abrams fully related that Plaintiff had made the earlier offer of settlement of $150,000 to Defendant's counsel, and explained that even though the estimation of Plaintiff's damages increased from $660,285 to $800,314, Plaintiff was not changing her offer of settlement from the $150,000 previously made to Defendant's counsel [Abrams Decl. at ¶ 3].  Upon information and belief, the restated settlement offer of $150,000 was conveyed to Defendant's counsel prior to the Settlement Conference [Epstein Decl. at ¶13].[1]

---

[1] Plaintiff's Settlement Memorandum was timely filed and complied with Judge Strawbridge's Settlement Conference Order in all respects except the non-reiterated earlier made offer of settlement. It was never suggested by Judge Strawbridge that it was improper for Plaintiff to restate her earlier offer of settlement in light of the damages calculation presented.

Plaintiff Maxine Snydman appeared for the Settlement Conference with counsel Alan Epstein.  She was also accompanied by her brother-in-law (who is also her financial advisor) as to permit a full assessment of any new offer of settlement made by Defendant. [Epstein Decl.¶ 14].  Mr. Epstein was thoroughly familiar with every aspect of the case and was fully able to guide his client through an evaluation of any settlement offer made by Defendant [Epstein Decl. at ¶ 3].  *See also* Mr. Epstein's professional background for rendering such advice in Epstein Decl. at ¶ 2 and Ex. 1 thereto.  Ms. Snydman as Plaintiff obviously had full authority to settle her case.

During the course of the mediation, the only definite offer from Defendant that Judge Strawbridge conveyed to Plaintiff was Defendant's original Offer of Judgment of $23,265.89, inclusive of attorneys' fees and costs [Epstein Decl. at ¶ 15].  However, after lengthy discussions with the parties, both collectively and individually, Judge Strawbridge reflected that based upon the statements made by Defendant's representatives, he **might** be able to persuade Defendant to agree to pay $50,000 in full and final settlement of plaintiff's claims (albeit Defendant had not specifically agreed to pay any amount over the originally offered $23,265.89) [Epstein Decl. at ¶16].  In response to that suggestion, Plaintiff and her counsel candidly advised Judge Strawbridge that Plaintiff's claims merited a greater settlement amount than $50,000 and that Plaintiff would not be willing to settle for that amount and the mediation concluded [Epstein Decl. at ¶ 17].

5

## III.    DISCUSSION

In summary of the legal principle reflected in the following discussion, the award of any sanction pursuant to Rule 16(1)(C) of the Federal Rule of Civil Procedure, the provisions of 28 U.S.C. §1927 or in accordance with the inherent powers of the court to sanction attorneys or the parties that they represent is not warranted either: against attorney for Plaintiff Alan Epstein who clearly did not vexatiously multiply proceedings in the present matter or engage in willful bad faith in connection with the settlement conference before Judge Strawbridge as required by the applicable statute; against attorney Epstein who did not engage in abusive actions so as to trigger a sanction issued under the inherent powers of the Court; or against Attorney Epstein or his client Maxine Snydman, who only refused to settle Ms. Snydman's claims at a level acceptable to the Defendant.

### A.    Section 1927 Liability

#### 1.    The General Principles Governing The Provisions of 28 U.S.C. §1927 Clearly Disallow The Imposition Of Sanctions Against Plaintiff's Attorney Alan B. Epstein[2]

Generally, pursuant to the provisions of 28 U.S.C. §1927, a court is authorized to impose cost and fee sanctions against an attorney for unreasonable and vexatious conduct that multiplies the costs and length of legal proceedings.  *Baker Indust., Inc. v. Cerebus Ltd.,* 764 F.2d 204, 208 (3d

---

[2] The applicable statute (28 U.S.C. §1927) by its very language specifically restricts its enforcement to attorneys.  While Defendant's plea for sanctions under 28 U.S.C. §1927 did not directly implicate Plaintiff Maxine Snydman, the failure to directly exonerate her from liability under the statute appears to be a deliberate attempt to misdirect the Court into a finding against her pursuant to its terms.

Cir. 1985).  The statute upon which the Defendant accounting firm bases its

plea for the imposition of sanctions specifically provides that:

> Any attorney or other person admitted to conduct
> cases in any court of the United States or any
> Territory thereof who so multiplies the proceedings in
> any case unreasonably and vexatiously may be
> required by the court to satisfy personally the excess
> costs, expenses and attorneys' fees reasonably
> incurred because of such conduct.

28 U.S.C. § 1927.  The determination whether to grant attorneys' fees and

costs under §1927 is a matter within the discretion of the trial court.  *See In re*

*Orthopedic Bone Screw Prods.*, 193 F.3d 781, 795 (3d Cir. 1999).

In order to state a claim for §1927 sanctions, the moving party must

establish each of the following elements: "(1) the attorney has multiplied

proceedings; (2) in an unreasonable and vexatious manner; (3) thereby

increasing the costs of the proceedings; and (4) doing so in bad faith or by

intentional misconduct." *Prudential Insurance v. America Sales Practice*, 278

F.3d 175, 188 (3d Cir. 2002).  The element of bad faith is a mandatory

prerequisite to imposing sanctions under the provisions in the statute.

*Hackman v. Valley Fair*, 932 F.2d 239, 242 (3d Cir. 1991).  Specifically, it is

well settled that a court must find willful bad faith on the part of the offending

lawyer in order to impose  sanctions pursuant to §1927.  *LaSalle National Bank*

*v. First Connecticut Holding Group*, LLC, XXIII, 287 F.3d 279, 289 (3d Cir.

2002). *See also Baker Indust.,* 764 F.2d at 208 (the conduct of the attorney

giving rise to sanctions ". . . must be of an egregious nature, stamped by bad faith that is violative of recognized standards in the conduct of litigation.").[3]

"Willful bad faith is demonstrated by 'findings that the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing this suit was for an improper purpose such as harassment.'" *Mazzone v. Grant Wilfley Casting*, Civ. A. No. 05-2267, 2008 U.S. Dist. LEXIS 32602 *4 (D.N.J. April 21, 2008) (*quoting Prudential Insurance v. America Sales Practice*, 278 F.3d at 188). Accordingly, sanctions should not be imposed under §1927 when the attorneys' conduct was a result of ". . . misunderstanding, bad judgment, or well-intentions." *LaSalle National Bank*, 287 F.3d at 288 (*citing Zuk v. Eastern Pennsylvania Psychiatric Inst.*, 103 F.3d 294, 297 (3d Cir. 1996)). As the District Court of New Jersey recognized in *Pauza v. The Standard Group, Inc.*, Civ. A. No. 06-2608, 2009 U.S. Dist. LEXIS 89913 **4-5 (D.N.J. September 28, 2009):

> This bad faith requirement is seen necessary to avoid chilling an attorneys' legitimate ethical obligation to represent his client zealously. . . If it were otherwise, an attorney who might be guilty of no more than a mistake in professional judgment in pursuing a client's goals might be made liable for excess attorneys' fees under Section 1927.

---

[3] Amper's attorneys cite to a decision of the federal district court for the District of Rhode Island to improperly suggest that the element of bad faith is not necessary to trigger an award of sanctions. *Plante v. Fleet National Bank*, 978 F. Supp. 59 (D.R.I. 1997). That decision, by its very language, relies on the anomalous minority view expressed by the courts of the First Circuit [*Id. at 70*], a view that, as reflected above, is not held by the Third Circuit. *See Hackman v. Valley Fair, supra.*; *LaSalle National Bank v. First Connecticut Holding Group, LLC*, XXIII, *supra*; *Baker Indust., supra.*

*Pauza*, 2009 U.S. Dist. LEXIS 89913 **4-5 (*quoting Baker Indus. Inc.*, 764 F.2d at 208-209).

Thus, the Third Circuit has consistently recognized that a sanction against an attorney is an act with far reaching repercussions and should be exercised with restraint. *See, e.g., Naviant Marketing Solutions, Inc. v. Larry Tucker, Inc.*, 339 F.3d 180, 185 (3d Cir. 2003) (any sanctions imposed on an attorney is a matter of serious concern that extends well beyond the monetary issues involved). *See also LaSalle Nat'l Bank*, 287 F.3d at 288-89 ("[c]ourts should exercise [this sanctioning power] only in instances of serious and steady disregard for the orderly process of justice"); *Baker Indust.*, 764 F.2d at 208 (the "power to assess the fees against an attorney should be exercised with restraint lest the prospect thereof chill the ardor of proper and forceful advocacy on behalf of his client."). This constraint on the district court's discretion is imposed because the power to sanction "carries with it the potential for abuse" and sanctions "act as a symbolic statement about the quality and integrity of an attorneys' work – a statement which may have [a] tangible effect upon the attorneys' career." *Id.* at 291. Therefore, the sanctioning of an attorney should be considered an extreme remedy, limited only to circumstances of willful attorney conduct. *Victoria Insurance Company v. Li He Ren, et al.*, Civ. A. No. 08-517, 2008 U.S. Dist. LEXIS 93798 *5 (E.D. Pa. November 10, 2008) (quoting *Baker Indus. Inc.*, 764 F.2d at 208). "This is to ensure that the statutes application does not 'stifle the enthusiasm or chill

the creativity that is the very life blood of the law.'" *Id.* (*quoting Mone v. Comm'r of Internal Revenue*, 774 F.2d 570, 574 (2d Cir. 1985)).

Additionally, even upon a finding of bad faith, the courts have been reluctant to impose attorneys' fees and costs against an attorney based upon countervailing considerations. *Mazzone*, 2008 U.S. Dist. LEXIS 32602 *5. As the *Mazzone* Court recognized:

> One consideration is to preserve the "American Rule" which is the principle "that each party to a lawsuit bears its own attorneys' fees. The "American Rule" is the cornerstone of American Legal Jurisprudence as it gives all economic classes of society the opportunity to litigate. Another consideration is the attorneys' ethical duty to be a zealous advocate for his client.

*Mazzone*, 2008 U.S. Dist. LEXIS 32602 *5 (internal citations omitted).

Finally, once a decision is made to impose sanctions, the amount of the sanctions imposed must reflect only those costs actually caused by the sanctionable conduct. *In re Prudential* 278 F.3d at 188. "Moreover, these costs and expenses are limited to those that could be taxed under 28 U.S.C. §1920." *Id.*

Applying the above principles, in *Barbee v. Southeastern Pennsylvania Transportation Authority*, Civ. A. No. 04-4063, 2007 U.S. Dist. LEXIS 7317 (E.D. Pa. February 1, 2007), the court refused to impose sanctions against the Plaintiff's attorney under 28 U.S.C. § 1927. *Barbee*, 2007 U.S. Dist. LEXIS 7317 *11. Unlike Alan Epstein who is accused only of not capitulating to the settlement value of Plaintiff's claims, plaintiff's counsel in *Barbee* failed to respond to Defendant's discovery requests, failed to file a timely Pretrial

10

Memorandum and pursued claims that were dismissed on summary judgment. *Id.* at *10. Plaintiff's counsel also listed trial witnesses that were never identified during discovery. As a result of this conduct, defense counsel was required to file various motions to obtain the compliance of plaintiff's counsel. *Id.* Recognizing that the actions of plaintiff's counsel were not "exemplary", and that he did "numerous things during the course of this litigation that slowed down the process", the *Barbee* Court declined to find that these actions were in willful bad faith for purposes of imposing § 1927 sanctions or that the conduct was motivated by a desire to harass or delay. *Id.* at **10-11. The court further found that the dismissal of certain claims on summary judgment was not proof that Plaintiff's counsel had no reasonable basis to file the lawsuit especially when it was only after discovery that facts were uncovered indicating that some of the claims should not move forward. *Id.* at *11.

Similarly, in *Maule v. Philadelphia Meeting Holdings, LLC, et al.*, Civ. A. No. 08-3357, 2009 U.S. Dist. LEXIS 3569 (E.D. Pa. January 16, 2009), the Court refused to sanction counsel under § 1927 because counsel advanced reasonable justifications for their actions and therefore, the conduct could not be characterized as unreasonable or vexatious. *Maule*, 2009 U.S. Dist. LEXIS 3569 at *9. In determining that the conduct was not vexatious, the Court reasoned:

> As noted above, they have advanced reasonable underlying explanations for each of the challenged actions. While their positions may not ultimately prevail, we cannot say that their actions have been completely unreasonable or vexatious. For this same

reason, we find no evidence of bad faith or intentional misconduct in this case.

*Id.  See also Pauza*, 2009 U.S. Dist. LEXIS 89913 *7 (requesting a sixty day extension of discovery and opposing a Motion for Summary Judgment is not evidence of bad faith or a legitimate basis for sanctions).

> **2.    Attorney For Plaintiff Alan Epstein Clearly Did Not Vexatiously Multiply Proceedings In The Present Matter Or Engage In Willful Bad Faith In Connection With The Settlement Conference Before Judge Strawbridge**

In accordance with the principles set forth above, it is apparent that no action by Mr. Epstein has properly exposed him to sanctions under the statute. While the admittedly received demand was not reiterated in writing in the pre-conference submissions, it was communicated to both the defendant and the Court.  In fact, Defendant's counsel, in his submitted Affidavit relates Defendant's full understanding that Nancy Abrams advised Judge Strawbridge of the original demand prior to the hearing, *see* declaration of Mark Salomon, Esquire at ¶ 16.  At no time prior to the conference did the attorneys for Plaintiff suggest that they were not interested in reaching a mediated resolution of Plaintiff's claims, nor was the offer of settlement in the amount of $150,000 ever suggested to be outrageous in light of the potential damages carefully delineated in the Statement presented in timely fashion prior to the conference to both Judge Strawbridge and the Defendant.

While the Plaintiff's pre-conference position statement clearly demonstrated that the information secured during the exchange of discovery documents and her continuing inability to secure alternative employment

increased her damages, Defendant appears to base its request for sanctions under the statute on the speculation that the Plaintiff's agreement to attend a mediation session with Judge Strawbridge "signified a departure from her initial position" and that Amper only agreed to attend the February 1, 2011 conference based on that unfounded anticipation. Certainly in light of the fact that Defendant never offered more than the amount originally stated in Defendant's Offer of Judgment, it is disingenuous for Defendant to posit that Attorney Epstein's reflection at the conference that Maxine Snydman was not interested in accepting the $50,000 Judge Strawbridge suggested he might be able to get for her in full settlement of her claims constituted a vexatious multiplying of the proceeding or the willful demonstration of the bad faith required by the statute.

**B.    Liability of Attorney Epstein Under Rule 16(f)(C)**

Defendant proffers that liability under the Rule 16(f)(C) of the Federal Rules of Civil Procedure is merited because Maxine Snydman's attorneys: (1) did not formally (in writing) reiterate her earlier transmitted offer (admittedly received by Defendant prior to the conference) to settle all of her claims against Defendant in the amount of $150,000 by the January 18, 2011 deadline set in the instructions issued by Judge Strawbridge (2); failed to restate that demand in Plaintiff's timely filed Mediation Statement submitted to Judge Strawbridge and sent to Defendant's counsel in timely fashion; and that her unspecified "conduct, when taken as a whole, demonstrates that she did not have a serious interest in pursuing settlement". In support of these postulations, Defendant

13

cites cases in which, unlike here, the bad faith violation of the Rules of Civil Procedure of the party who was sanctioned was clear and egregious.

In *Karahuta v. Boardwalk Regency Corporation*, 2007 WL 2825722 (E.D.Pa. Sept. 27, 2007), (the only Third Circuit case cited in support of its request for relief under the Rule) the defendant was specifically directed to have a corporate representative with full settlement authority present at the settlement conference. When a representative with only limited authority appeared at the first conference, the court rescheduled the conference twice to permit a representative with full authority to attend. However, despite these efforts to gain compliance with the court's twice repeated admonition, only the same representative with limited authority attended the rescheduled conference, and the individual with full authority refused to make himself available to the court.

Similarly, in *Nick v. Morgan's Foods, Inc.*, 99 F.Supp. 1056 (E.D.Mo. 2000), the sanctioned defendant failed to provide any memorandum to the neutral as required by the court's order and also failed to have a representative who had authority to settle the matter attend the conference, but rather sent a representative who did not have any independent knowledge of the case and only had settlement authority up to $500.

The facts presented in the decision of the United States Court of Appeals for the Fifth Circuit in *Guillory v. Domtar Industries Incorporated*, 95 F.3d 1420 (5th Cir. 1006) also reflect egregious conduct that clearly demonstrates bad faith. In fact, in that matter the sanctioned party's attorney made it clear at the

settlement conference that his party had never had any intention of settling and that they intended only to try the case.

The remaining cases cited by Defendant from other federal jurisdictions are equally inapposite relating to Rule 16 violations. *See In re Novak*, 932 F.2d 1397 (11th Cir. 1991)(the sanctioned party refused to give the attorney who participated in the settlement conference full authority to settle the case and failed to have someone with full authority appear); *Flaherty v. Dayton Electric Manufacturing Company*, 109 F.R.D. 617 (D.Ma. 1986)(the attorney who attended the settlement conference was not familiar with the facts in the case, including the extent of the plaintiff's injuries or the factual basis for the plaintiff's damages); *Official Airline Guides, Inc.*, 6 F.3d 1385 (9th Cir. 1993)(the sanctioned party's attorney appeared at the settlement conference alone, without settlement authority and no one with settlement authority was available by telephone); *Legault v.* Zambarano, 105 F.3d 24 (1st Cir. 1997)(the sanctioned party's pretrial submissions were filed over three weeks after the deadline imposed by the court's pretrial order); *Unique Concepts, Inc. v. Brown*, 115 F.R.D. 292 (S.D.N.Y. 1987)(the sanctioned party's attorney engaged in extensive and gratuitous comments and colloquies during a deposition); *Plante v. Fleet National Bank*, 978 F.Supp. 59 (D.R.I. 1997)(Rule 11 sanctions imposed for filing a frivolous claim); *Warner Brothers, Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120 (2d Cir. 1989)(the sanctioned party's attorney submitted briefs with excessive string citations of unreported interlocutory district court orders identified only by name and docket number).

In the present matter, Plaintiff came to the settlement conference with counsel who was thoroughly familiar with both the factual and legal issues in the case and brought with her to aid in the mediation process her brother-in-law to act as her financial advisor relating to the evaluation of any offer that might be made.  Plaintiff's failure to formally restate her offer of settlement to Defendant just prior to the mediation did not impede that process, is not evidence that her participation in the mediation was "in bad faith" and is far from the type of egregious conduct that would warrant sanctions under any of the theories argued by Defendant.

### B. The Failure of Settlement Is Not Sufficient to Establish Liability for Sanctions Against Attorney Epstein Or His Client

Nothing in the applicable statute, the Federal Rules of Civil of Procedure, this Court's Local Rules, or Judge Strawbridge's Settlement Conference Order mandates that just because a Settlement Conference was scheduled and held a settlement must be reached.  Nor is there any prescription in the rules, statute, or case law that if a mediation does not result in a settlement, a Plaintiff rejecting a settlement offer is amendable to sanctions.  *Nick v. Morgan's Foods, Inc., supra.,* 99 F.Supp.2d at 1061; *General Conference Corporation Of Seventh-Day Adventists v. McGill,* 2009 WL 1505738 at *3 (W.D.Tenn. May 28, 2009). Here Plaintiff maintained (did not raise) the $150,000 offer of settlement she had made earlier in the litigation, even though her damages calculation increased from the original $660,285 presented to Defendant as part of her initial self-executing discovery disclosures to the $800,314 statement made in

16

her mediation statement, an increase supported by the additional information gained in discovery and a more accurate estimate of her damages.

Knowing Plaintiff's offer of settlement had not changed, Defendant chose to attend the mediation and rigidly maintained the same settlement offer it had maintained throughout the litigation.  In response to that position affected by Defendant rather than changing the amount of her offer of settlement, Plaintiff's counsel sought to persuade Defendant through Judge Strawbridge that Plaintiff's offer of settlement was reasonable given the Defendant's exposure at trial, a tactic that had been very successful in settling matters in past mediations attended by Plaintiff's counsel [Epstein Declaration, ¶ 16, 17]. Nothing in Plaintiff's conduct or that of her counsel is evidence that she demonstrated bad faith.  Indeed, Defendant's position on what constituted, in its view, an apparently appropriate settlement amount was as entrenched as it now accuses Plaintiff's position as being.  If Defendant's position is adopted as the standard of review for what is sanctionable conduct during mediated settlement negotiations, then every unsuccessful mediation would lead to a post-mediation hearing on the issue of bad faith.  It is respectfully suggested that such a procedural nightmare is untenable.

Because there is no evidence of bad faith in Plaintiff's conduct before or during the settlement conference, it is respectfully suggested that Defendant's Motion for Sanctions must be denied.[4]

## IV.   CONCLUSION

As discussed at length above, Plaintiff entered into the mediation process completely in good faith, making a reasonable offer of settlement and attending the mediation with counsel who was very well versed in the factual and legal issues in the case and a family member/financial advisor who was to aid her in evaluating any settlement offer made.  Plaintiff's alleged failure to capitulate to

---

[4] Because of the serious implications that flow from being sanctioned by any court and the effect that sanctions have on an attorney's career, the sanctions sought should only be assessed after a full evidentiary hearing at which Defendant would be required to present adequate evidence to support the heavy burdens stated above.  *See Prudential Insurance*, 278 F.3d at 191:

> 'The *Due Process Clause of the Fifth Amendment* requires a federal court to provide notice and an opportunity to be heard before sanctions are imposed on an ...attorney.'  We have held that 'particularized notice is required to comport with due process.' ...'Generally speaking, particularized notice will usually require notice of the precise sanctioning tool that the court intends to employ.'  An opportunity to be heard is 'especially important' where a lawyer or firm's 'reputation is at stake,' because sanctions 'act as a symbolic statement about the quality and integrity of an attorney's work – a statement which may have a tangible effect upon the attorney's career.'

*Id.* (internal citations omitted).

> In the context of a sanction imposed on the basis of a chosen strategy employed during a mediation, such hearings would possibly and expendably expose a presiding mediator in this case a Magistrate Judge is a witness and thereby require the parties to examine and cross-examine a person that is required to maintain confidentiality and mentality.  The long range affect on cooperative mediation efforts would be devastating.

Defendant's position by accepting a far lower amount than one she believed was based on a realistic assessment of the value of her claims, simply does not constitute bad faith and is far from the type of egregious conduct for which sanctions have been imposed by any court.

Based on the indisputable evidence of Plaintiff's good faith participation in the mediation, it is equally clear that Defendant's Motion for Sanctions is itself frivolous and itself is the proper basis for the imposition of sensations pursuant to the court's influent powers to control the behavior of parties and their attorneys.  Accordingly, Plaintiff respectfully suggests that Defendant's Motion for Sanctions must be denied and Plaintiff should be awarded reasonable attorneys' fees and costs incurred by her in responding to Defendant's frivolous Motion for Sanctions

Respectfully submitted,

_____/s/_____ ABE 2825
Alan B. Epstein, Esquire (I.D. # 02346)
Nancy Abrams, Esquire (I.D. # 31089)

SPECTOR GADON & ROSEN, PC
Seven Penn Center
1635 Market Street, Seventh Floor
Philadelphia, PA 19103
Attorneys for Plaintiff, Maxine Snydman

Dated:  February 24, 2011

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that true and correct copies of the foregoing Response to Defendant Amper, Politziner & Mattia, LLP's Motion for Sanctions and supporting Memorandum of Law were served on counsel for Defendant by transmitting a copy thereof via USDC EDPa ECF notification and via electronic mail to:

Mark A. Saloman, Esquire
PROSKAUER ROSE LLP
One Newark Center
Newark, NJ  07102-5211
msaloman@proskauer.com

Barry L. Cohen, Esquire
SORIN ROYER COOPER, LLC
101 West Elm Street, Suite 220
Conshohocken, PA  19428
bcohen@sorinroyercooper.com

Counsel for Defendant Amper, Politziner & Mattia, LLP


_____/s/_____NA1161_
Nancy Abrams, Esquire

Dated:  February 24, 2011