IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MAXINE SNYDMAN,           :     CIVIL ACTION
        Plaintiff        :
                       :
     v.                 :     NO.  10-1344
                       :
AMPER, POLITZINER & MATTIA, LLP, :
        Defendant.     :

## MEMORANDUM OPINION

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE          July   15, 2011

Presently before the Court is the motion of Defendant Amper, Politziner & Mattia, LLP[1] ("Amper") for sanctions of Plaintiff Maxine Snydman ("Snydman") and her counsel, Alan B. Epstein, Esquire ("Epstein")  (Doc. 22).  Snydman has filed her response (Doc. 24) and Amper has filed its reply (Doc. 29).  Judge Baylson held oral argument on March 22, 2011 (Doc. 31) and, on April 5, 2011, referred the matter to this Court for disposition pursuant to Fed. R. Civ. P. 72(a) (Doc. 36).

Amper seeks sanctions in the form of costs and attorneys fees against both Snydman and Epstein for their failure to comply with a Court order regarding preparations for a court-ordered settlement conference and what Amper characterizes as bad faith conduct in connection with that conference.  (Def. Mem. [Doc. 22-1] at 1.)  Amper contends that the Court is empowered to issue the requested sanction through either its inherent power, Fed. R. Civ. P. 16(f), or 28 U.S.C. § 1927.

---

[1] Like the parties, we refer to Defendant as Amper, Politziner & Mattia, LLP or "Amper." The parties' stipulation of September 8, 2010 clarifies that the references in their pleadings to Amper refer to Eisner Amper, LLP, which appears to be the current name of the company, a change that occurred subsequent to the events at issue in this litigation.

(*Id.* at 4.) Snydman contends that neither she nor her counsel engaged in any sanctionable conduct, that Defendant's sanctions motion is frivolous, and that the Court should award *to her* the attorney's fees and costs that *she* has incurred in responding to Amper's motion. (Pl. Mem. [Doc. 24-1] at 19 & Prop. Order [Doc. 24-5].)

For the reasons set out below, we will sanction Epstein and Snydman, jointly and severally, for two violations of an order of this Court pertaining to a settlement process to which the parties had consented.

## I.   RELEVANT FACTS[2]

Snydman filed her complaint on March 26, 2010.  Some thirteen weeks later, on or about June 30, 2010, Epstein communicated to counsel for Amper, Mark A. Saloman, Esquire ("Saloman"), Plaintiff's settlement demand of $150,000.  (Epstein Decl. [Doc. 24-2] ¶ 5; Saloman Decl. [Doc. 35] ¶ 2.)  Amper did not immediately respond to that demand, but five weeks later, on or about August 2, 2010, served an offer of judgment of $23,265.89 upon Plaintiff.  (Salomon Decl. ¶ 7; Epstein Decl. ¶ 6.)

On July 26, 2010, counsel participated in an initial scheduling conference at which Judge

---

[2]   The undersigned acknowledges his familiarity with many of the circumstances that gave rise to this motion in that he conducted a telephone conference with counsel regarding the referral of this matter to him by Judge Baylson for purposes of settlement discussions, *see* Sched. Order (July 28, 2010) at ¶ 3 (Baylson, J.) ("Magistrate Judge David Strawbridge will contact counsel as to whether settlement discussions have taken place and to schedule a settlement conference."); his staff had contact with counsel concerning the point in time at which the parties were prepared to participate in an in-person settlement conference requiring the participation of their clients; and he was an active participant in the settlement conference that was held on February 1, 2011.

In resolving this sanctions motion, the undersigned deems it appropriate to resolve this issue by reference to the uncontested facts that may be derived from the declarations of counsel that the parties have appended to their briefs, the developments in the case that are reflected on the docket, and the settlement memoranda that the parties submitted to the undersigned in January 2011.

Baylson "suggested that the parties consider participating in a settlement conference" before the undersigned.  (Salomon Decl. ¶ 4.)  Saloman advised Judge Baylson that Amper was willing to attend a settlement conference, but Epstein indicated that he did not believe it would be fruitful until Plaintiff could obtain written discovery to ascertain the full extent of her alleged losses.  (Salomon Decl. ¶¶ 5-6; Epstein Decl. ¶ 4.)  Following that initial teleconference, Judge Baylson issued a Scheduling Order on July 28, 2010 advising the parties that "Magistrate Judge David Strawbridge will contact counsel as to whether settlement discussions have taken place and to schedule a settlement conference." (Doc. 10 ¶ 3.)  Pursuant to that directive, and to assess the "case status and [] discuss a possible settlement conference date," the undersigned convened a telephone status conference with counsel on October 8, 2010.  *See* Notice of Aug. 27, 2010 (Doc. 12).  We did not, at that time, list the matter for an in-person conference in that Epstein indicated that he would need to speak with his client and because it appeared that there was not then a reasonable prospect for settling the matter.  My staff contacted counsel a month later, explained that it was our understanding from the October 8th telephone conference that there had not been a prospect for settlement, but inquiring whether counsel had "thought it over and might now have reconsidered and would be interested in a settlement conference."  *See* E-mail message from Chambers to Esptein and Saloman (Nov. 8, 2010).[3]  Counsel separately contacted my chambers in response to indicate that they believed a settlement conference would be helpful and expressing their willingness to participate in a settlement conference.  *See, e.g.,* Confirming e-mail message to counsel from Chambers (Nov. 23,

---

[3] This communication was not among the exhibits marked by the parties in the papers.  There can be no question, however, as to this e-mail message having been transmitted to and received by Epstein and Saloman, as the e-mail message from later in November that was marked as an exhibit memorializes their communications made in response to the November 8th inquiry.

2010).  (Mot. at Ex. 1; Salomon Decl. ¶ 10; Epstein Decl. ¶ 7.)  Counsel agreed upon a January 2011 date for the settlement conference.  The conference was subsequently re-scheduled for February 1, 2011 due to a scheduling conflict that arose in the Court's calendar.  (Docs. 17, 19.)

Both the initial Settlement Conference Order of December 6, 2010 and the Amended Settlement Conference Order of January 5, 2011 set out the Court's expectations for the upcoming settlement conference, including the fact that personal attendance was required of counsel as well as client representatives and that "[t]he Court fully expects that the parties have a serious interest in pursuing settlement."  *See, e.g.,* Order, Jan. 5, 2011, at 1.  (Doc. 19.)  The Amended Settlement Conference Order also set forth the protocol that the undersigned regularly employs, consisting of the following elements: (1)  for Plaintiff to "set out to [D]efendant a written good faith demand" "[p]rior to the conference, but not later than" approximately fourteen days before the scheduled conference date (Doc. 19 at 1); (2) for Defendant to "respond to the demand in good faith on or before" a date about three days later and to then "initiate a discussion with opposing counsel regarding the parties' settlement positions" (Doc. 19 at 1); and (3) the submission to the undersigned and to opposing counsel of a "settlement memorandum" that was not to exceed four pages and was to address eight enumerated topics, including "[t]he last demand and/or offer" (Doc. 19 at 1-2).  In this case, then, Plaintiff was ordered to set out a written good-faith demand no later than January 18, 2011, to which Defendant was under an obligation to "respond" by January 21, 2011 and to then initiate a dialogue with Epstein through Saloman.

It is undisputed that Plaintiff did not set out a written demand in response to the Amended Settlement Conference Order of January 5, 2011.  *See* Saloman Decl. ¶¶ 13, 15 (noting no written demand received by January 18, 2011); Epstein Decl. ¶ 10 (indicating only that Plaintiff had always

4

"maintained a settlement offer of $150,000" and that "[that] figure was communicated to

Defendant's counsel" in an unspecified manner "on at least two occasions," but failing to state when

communications took place either by date or in relation to the entry of either of the Court's

Settlement Conference Orders).

Snydman, through Epstein and co-counsel Nancy Abrams, Esquire, submitted to the

undersigned by the January 27, 2011 deadline and served upon counsel for Amper a "Mediation

Statement," purportedly pursuant to the Court's January 5th Order. Her submission consisted of four

pages of her "Statement of Facts" and four pages of her "Statement of Damages."[4] It did not address

several of the items that were required to be included in the parties' settlement memoranda as set

forth in the Court's January 5th Order, including "[t]he last demand and/or offer." Amper's

memorandum, while not addressing the factual and legal basis of its position concerning damages,[5]

otherwise addressed the items enumerated in the Court's Order, including reporting on "Prior

settlement discussions:"

> Plaintiff made an oral settlement demand on or about June 30, 2010
> for $150,000; Amper served an Offer of Judgment on August 2, 2010
> in the amount of $23,265.89. [citation omitted.] Contrary to the
> Court's Order, Plaintiff did not provide a written good faith demand
> to defense counsel by January 18, 2011.

(Amper Sett. Mem. at 4.) In that no written good faith demand had been provided to counsel for

Amper by Snydman subsequent to the Court's Orders and before January 18, 2011, there was no

demand to respond to by the January 21, 2011 deadline set forth in the Court's January 5, 2011

---

[4] The total damages estimated by Plaintiff on her various causes of action, including
attorneys fees and costs to that date, totaled $800,314.

[5] As Amper indicated in the memorandum, it addressed that issue in a separate *ex parte*
submission.

Order.  It does not appear that at any point prior to the settlement conference, and even after receipt of the Snydman "Mediation Statement" that did not reflect the last demand, Amper "then [] initiate[d] a discussion with opposing counsel regarding the parties' settlement positions." (Doc. 19 at 1.)

The undersigned spoke on January 31, 2011 with Abrams, who had transmitted the "Mediation Statement" that bore Epstein's signature above both of their printed names as counsel for Plaintiff.  Abrams communicated that Plaintiff's settlement demand remained $150,000. (Abrams Decl. ¶ 3; Saloman Decl. ¶ 16.)[6]  Neither during this call nor at any other time prior to the settlement conference did Snydman communicate to the Court — or, more importantly, to Amper — that her demand of $150,000 was firm.

Snydman appeared at the conference on February 1, 2011 with Epstein and with her brother-in-law as financial advisor.  Saloman appeared with Amper's managing partner, Jay Weinstein. Saloman traveled from Newark, New Jersey to the Philadelphia federal courthouse for the conference.  The conference lasted approximately 3 ½ hours.  *See* Doc. 21 (minute sheet).  After meeting with the defense, the undersigned indicated to the Plaintiff's group his belief that he might be able to convince Amper to increase its offer from its $23,265 offer of judgment — its only offer of settlement — to $50,000.  (Epstein Decl. ¶ 16.)  Snydman and Epstein responded to the undersigned that that amount was not acceptable.  (Epstein Decl. ¶ 17.)  As Epstein words it, "and the mediation concluded without reaching a resolution[.]" (*Id.*) Saloman's declaration memorializes

---

[6]  As reflected in the declaration Abrams submitted, she communicated that Snydman "was not changing her offer of settlement from the $150,000 previously made to Defendant's counsel" even though "the estimation of Plaintiff's damages increased from $660,285 to $800,314." (Abrams Decl. ¶ 3.)

that, after that meeting with the Plaintiff's group, the undersigned reported to Saloman and Weinstein that "Plaintiff refused to engage in any negotiation concerning her June 30, 2010 settlement demand." (Saloman Decl. ¶ 19.)  We take it as uncontested that Plaintiff did not manifest a willingness at any point in the February 1, 2011 settlement conference to compromise her demand from the $150,000 figure that she had maintained since June 30, 2010.[7]

Amper contends that it expended $9,225 in legal costs leading up to the settlement conference ($1,237.50 in counsel's communications with the Court and the client concerning the scheduling of the conference, $6,187.50 for 13.75 hours of attorney time spent preparing Amper's settlement memoranda, and $1,800 for 4 additional hours of attorney time spent in "preparation for [the] settlement conference"); $3,189.18 in attorney time and travel expenses of counsel on February 1, 2011; and $2,520 in lost corporate billing time of its corporate representative, Weinstein, due to his preparations for, travel to, and attendance at the settlement conference.  Amper also expended $5,387.50 for preparation of the sanctions motion that it filed on February 10, 2011.  (Saloman Decl. ¶¶ 23-24.)

## II.   DISCUSSION

Amper contends that the imposition of the sanctions it requests — that Plaintiff be ordered to pay Amper some $20,321.68 — is appropriate under any (or all) of four sources of authority it

---

[7]  As we explain in more detail below, we express no view in this opinion as to the validity or propriety of that position, as that is, at best, a role reserved for and limited to the undersigned's role in the context of confidential settlement discussions.  The particulars of the position taken by Plaintiff on February 1, 2011 is relevant, however, to the question of whether the futility of the settlement conference could have been ascertained in the days leading up to the conference and whether Plaintiff's failure to communicate to Amper her renewed demand, and in light of her agreement in November 2010 that she was ready to participate in a conference, reasonably led Amper to expect some willingness to compromise, which was not forthcoming.

cites: (1) Rule 16(f)(1)(B) of the Federal Rules of Civil Procedure; (2) Rule 16(f)(1)(C); (3) 28 U.S.C. § 1927; or (4) the Court's inherent power.  We first address the authorities that we find inapplicable and then explain why we think a limited sanction is warranted under Fed. R. Civ. P. 16(f)(1)(C).

### A.      The Court's inherent power

Courts have long been recognized to possess an "inherent power" to manage their own affairs and to provide for the orderly and expeditious disposition of cases in order to administer justice.  *See, e.g., Link v. Wabash R.R.*, 370 U.S. 626, 630-31 (1962) (dismissal of case for failure to attend conference and lack of prosecution).  The inherent powers of a federal court have been described by the Supreme Court as "those which 'are necessary to the exercise of all others.'"  *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980) (quoting *United States v. Hudson*, 7 Cranch 32, 34, 3 L. Ed. 259 (1812)).  "The most prominent of these is the contempt sanction, 'which a judge must have and exercise in protecting the due and orderly administration of justice and in maintaining the authority and dignity of the court . . . .'"  *Id.* at 764 (quoting *Cooke v. United States*, 267 U.S. 517, 539 (1925)).  The Supreme Court has recognized the propriety of imposing sanctions in the form of counsel fees for failure to comply with pretrial procedures where necessary to protect the court's ability to function and where a party has acted in bad faith.  *See id.* at 765-66.

Relying upon *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), Amper contends that the Court "may assess attorney's fees against the responsible party . . . when a party shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order." (Def. Mem. at 14 (quoting *Chambers*, 501 U.S. at 46).)  While the Supreme Court in *Chambers* makes passing reference — relying upon a footnote in an early opinion — to the notion of imposing sanctions for

8

"hampering enforcement of a court order,"[8] we decline to pass judgment on whether the conduct of

Snydman or Epstein requires the exercise of this Court's inherent power to shift the burden of

counsel fees.  While we find that Plaintiff's failure to adhere to certain particulars of an Order of this

Court contributed to failures on the part of both parties to ensure that time spent exploring a

settlement disposition would be fruitful, we believe, as discussed within, that Rule 16 provides an

alternate and more appropriate basis upon which we can address the consequences of this failure.

We thus decline Amper's invitation to sanction Snydman and/or Epstein under the authority of the

Court's inherent power.

**B.**     **28 U.S.C. § 1927**

28 U.S.C. § 1927 provides that an attorney "who so multiplies the proceedings in any case

unreasonably and vexatiously may be required by the court to satisfy personally the excess costs,

expenses, and attorneys' fees reasonably incurred because of such conduct."  Amper contends that

§ 1927 sanctions are justified when the attorney's conduct requires the scheduling of proceedings

---

[8]   The Court in *Chambers* noted that, among other bases justifying exercise of a federal court's "inherent power to assess attorney's fees against counsel," notwithstanding the American Rule that each party bear its costs, is that:

> [A] court may assess attorney's fees when a party has "'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"  *Alyeska* [*Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240,] 258-259 [(1975)] [citations omitted].  In this regard, if a court finds "that fraud has been practiced upon it, or that the very temple of justice has been defiled," it may assess attorney's fees against the responsible party, *Universal Oil* [*Products Co. v. Root Refining Co.*, 328 U.S. 575,] 580 [(1946)], as it may when a party "shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order," [footnote omitted] *Hutto* [*v. Finney*, 437 U.S. 678], 689, n. 14 [(1978)].

*Chambers*, 501 U.S. at 46.

that the court deems were unnecessary.  It contends that Amper agreed to participate in a settlement conference based upon reasonable assumptions of Plaintiff's willingness to depart from her initial position.  It attributes this understanding to Epstein's representation to my staff in November 2010 that Plaintiff would participate in a conference.  It contends that "a vast amount of resources [] have now been wasted in orchestrating a futile settlement conference," for which Epstein would be personally liable under 28 U.S.C. § 1927.  (Def. Mem. at 13-14.)

Sanctions under § 1927 require that proceedings have been multiplied "unreasonably and vexatiously."   In addition, the proceedings must have been "*so* multiplied" (emphasis added), suggesting a mushrooming of proceedings as a result of the attorney's conduct.  We conclude here, as we did with respect to any remedy under the Court's inherent power, that Rule 16 is the more appropriate avenue for resolving the concerns raised by Amper as to Epstein's conduct.  We thus decline Amper's invitation to impose sanctions pursuant to 28 U.S.C. § 1927.

### C.     Fed. R. Civ. P. 16(f)(1)(B)

Amper also requests that sanctions be imposed pursuant to two different provisions of Rule 16 of the Federal Rules of Civil Procedure, which we address here in turn.

We observe at the outset that Rule 16 is designed to give the Court opportunities to take an active role in case management, including "designing case-specific plans for positioning litigation as efficiently as possible for disposition by *settlement*, motion or trial." 3 Moore's Federal Practice, §16.02 (Matthew Bender 3d ed.) (emphasis added).  As the Third Circuit has explained:

> The purpose of [Rule 16] is to provide for judicial control over a case
> at an early stage in the proceedings.  The preparation and presentation
> of cases is thus streamlined, making the trial process more efficient,
> less costly, as well as improving and *facilitating the opportunities for
> settlement.*

10

> . . .
> The purpose of Rule 16 is to maximize the efficiency of the court
> system by insisting that attorneys and clients cooperate with the court
> and abandon practices which unreasonably interfere with the
> expeditious management of cases.
> . . .
> The intent and spirit of Rule 16 is to allow courts to actively manage
> the timetable of case preparation so as to expedite the speedy
> disposition of cases.

*Newton v. A.C. & S., Inc.*, 918 F.2d 1121, 1126 (3d Cir. 1990) (emphasis added).  To this end, Rule

16 contains its own remedial provision, subparagraph (f), entitled "Sanctions," which provides in

relevant part that:

> (1)  *In General.*  On motion or on its own, the court may issue any
> just orders . . . if a party or its attorney:
> (A) fails to appear at a scheduling or other pretrial conference;
> (B) is substantially unprepared to participate — or does not
> participate in good faith — in the [scheduling or other pretrial]
> conference; or
> (C) fails to obey a scheduling or other pretrial order.
>
> (2) *Imposing Fees and Costs.*  Instead of or in addition to any other
> sanction, the court  must order the party, its attorney, or both, to pay
> the reasonable expenses — including attorney's fees — incurred
> because of any noncompliance with this rule, unless the
> noncompliance was substantially justified or other circumstances
> make an award of expenses unjust.

Fed. R. Civ. P. 16(f)(1).

In what it advances as its lead argument, Amper requests that the Court sanction Epstein and

Snydman pursuant to Rule 16(f)(1)(B) for their "bad faith conduct," (Def. Mem. at 4), which we take

to be an allegation that Plaintiff "[did] not participate in good faith in the [settlement] conference"

that was held on February 1, 2011.  *See* Fed. R. Civ. P. 16(f)(1)(B).  Amper contends that Epstein

and Snydman attended the conference "with no intent to negotiate or reach settlement" and that this

lack of "interest[] in a good faith settlement dialog" [sic] is evidenced by "Epstein's failure to submit a good faith demand or include Plaintiff's June 30, 2010 demand in her Mediation Statement pursuant to the Court's Orders."  (Def. Mem. at 5, 7.)  Amper also argues that Epstein knew that "Plaintiff did not believe settlement was a realistic possibility" (*id.* at 7), but "conceal[ed] Plaintiff's true position" (*id.* at 8), and that "Plaintiff and Mr. Epstein strung along the Court and Amper," making Amper "s[i]t for more than three hours until Plaintiff's obstructive position became clear" (*id.* at 7).

We are unprepared to find that Snydman or Epstein's participation in the "pretrial conference" contemplated by Rule 16(f)(1)(A & B) — e.g., the settlement conference of February 1, 2011 — can be characterized as participation lacking in good faith.  We appreciate the perception that Snydman and Epstein portrayed through their conduct.[9]  Having engaged in a detached and thoughtful analysis, however, we also appreciate that the Plaintiff's group never indicated that Snydman had no intention of settling and that they intended only to try the case.  On the contrary, Snydman put forward a number to which she consistently held; she neither retracted it as an offer

---

[9]  Plaintiff responds that Amper is seeking sanctions against Snydman and Epstein for their "refus[al] to settle Ms. Snydman's claims at a level acceptable to the Defendant." (Pl. Mem. at 6.) Were that Amper's complaint, there would have been no question that Plaintiff could not be sanctioned for failing to agree to a particular number, regardless of whether it was one that the settlement judge suggested he could likely convince Defendant to put on the table.  Yet there was more to it than that.  Both sides entered the conference having maintained settlement offers that they had made at earlier points in time.  When the undersigned met with the defense representatives and after what both parties characterize as lengthy discussions, the defense manifested a willingness to increase its offer in an effort to resolve the case.  Plaintiff's response was to reject the proposed increased offer from Amper and to communicate essentially that a settlement would not be struck unless Amper agreed to settle at the figure that she had maintained — she was unwilling to suggest a lower figure.  While a plaintiff is free to set the number at which she will agree to discontinue litigation that she initiated, the defense understandably would not have expected that Snydman would cling to her number as she did.

to settle the case nor increased it even as her attorneys' fees and costs in the case presumably increased.  The number also obviously reflected a compromise over her best-case-scenario schedule of damages (as outlined by Epstein in documents shared with opposing counsel and the Court) should the case go to trial.  There is no indication that, had Amper offered $150,000 instead of $23,265.89, a settlement would not have been reached on February 1, 2011.  While the Court would have hoped that the experience of discussing the benefits of compromising claims and probing the relative merits and likely exposures of both parties' cases, and particularly in light of the fact that the undersigned evidenced a willingness to work to increase Amper's settlement offer, would have caused Plaintiff to indicate in some manner a willingness to reduce her demand such as to keep the process moving, that did not occur.  We cannot say, however, that Snydman and/or Epstein's participation in the 3 ½ hour settlement conference can fairly be described as lacking in good faith.

Amper alternatively requests sanctions under the portion of Rule 16(f)(1)(B) that prohibits an attorney or party from being "substantially unprepared to participate" in a pretrial conference.  Amper contends that Epstein's conduct on February 1, 2011 "may also be likened to attending a conference unprepared" in that the "failure to submit a demand to Amper as ordered by the Court basically tied Amper's hands and substantially impaired the proceeding."  (Def. Mem. at 8.)  While we agree, as set out below, that Plaintiff's failure to comply with the portions of the Amended Settlement Conference Order that required that a demand by Plaintiff be formalized in writing and served upon Amper in the weeks leading up to the conference impeded the process, we do not find this deficiency to be best characterized as a lack of preparation to participate in the February 1, 2011 settlement conference.  Therefore, we will not impose sanctions under Rule 16(f)(1)(B).

13

## D.     Fed. R. Civ. P. 16(f)(1)(C)

The final basis that Amper contends supports its request for sanctions is Rule 16(f)(1)(C), which expressly authorizes a court to sanction a party or attorney for "fail[ing] to obey a scheduling or other pretrial order."  Fed. R. Civ. P. 16(f)(1)(C).  Amper contends that Snydman and Epstein violated this Court's Amended Settlement Conference Order by failing to: (1) submit a written good faith demand by January 18, 2011; (2) include in its Mediation Statement a recitation of the last demand and offer; and (3) demonstrate a serious interest in pursuing settlement.  (Def. Mem. at 9.) In her response, accompanied by Epstein's declaration, Snydman contends that she "did not retransmit [her] offer of settlement in writing to Defendants" because her offer had not changed from her earlier offer.  (Pl. Mem. at 4.)  She also points to the fact that co-counsel Abrams confirmed to the undersigned in a telephone conversation on January 31, 2011, the day before the settlement conference, that Plaintiff's good faith demand for purposes of the settlement conference was $150,000 and that a demand in that amount had previously been conveyed to Amper.[10]  (*Id.*)

We find that Plaintiff violated this Court's Amended Settlement Conference Order by not conveying to Defendant, in writing, her settlement demand following upon entry of the Amended Settlement Conference Order (or, for that matter, the initial Settlement Conference Order).  Plaintiff cannot be deemed to have complied with this portion of the January 5, 2011 Order simply because she conveyed a settlement demand, orally, some six months earlier.  Therefore, we agree with Amper that Plaintiff stands in violation of this Order.  We also find that Plaintiff violated the same Order in that the "Mediation Statement" that she submitted did not follow the format set out in the Court's

---

[10]  Plaintiff notes that while the demand remained at $150,000, her estimation of her potential damages had increased from $660,285 to $800,314 in the time since the demand was first conveyed. *See* Abrams Decl. ¶ 3.

Order and, importantly, did not provide the Court with the required report on the status of settlement

negotiations, specifically the last demand and/or offer as of the time the settlement memorandum

was submitted.

At the same time we are unprepared to conclude that Plaintiff violated the terms of our Order

by, as Amper suggests, failing to "demonstrate a serious interest in pursuing settlement." (Def.

Mem. at 9.) Our Order communicates our "expectation" that "the parties have a serious interest in

pursuing settlement." *See* Order, Jan. 5, 2011, at 1 ("The Court fully expects that the parties have

a serious interest in pursuing settlement."). This is, however, a statement of expectation only. While

we may be seriously concerned about the conduct of counsel and the plaintiff, we are not prepared

to impose sanctions upon either for failing to meet our expectation. Therefore, we do not find a basis

to sanction Plaintiff on the third ground asserted by Amper with respect to violations of this Court's

Amended Settlement Conference Order. We turn now to the question of the appropriate sanction

for the two violations of our Order that we did find Plaintiff to have made.

### E.     Remedy

As outlined above, Rule 16 provides for the following in terms of sanctions if a party or its

attorney has violated any of the three provisions set forth in Rule 16(f)(1):

> (2) *Imposing Fees and Costs.* Instead of or in addition to any other
> sanction, the court must order the party, its attorney, or both, to pay
> the reasonable expenses — including attorney's fees — incurred
> because of any noncompliance with this rule, unless the
> noncompliance was substantially justified or other circumstances
> make an award of expenses unjust.

Fed. R. Civ. P. 16(f)(2). As the Third Circuit has recognized, the district courts are given "very

broad discretion" to use Rule 16 sanctions "'where necessary' to ensure compliance with pretrial

orders," as this power "facilitates the 'expeditious and sound management of the preparation of cases for trial.'" *Tracinda Corp. v. DaimlerChrysler AG*, 602 F.3d 212, 242 (3d Cir. 2007) (quoting *In re Sanction of Baker*, 744 F.2d 1438, 1440 (10th Cir. 1984)).

In light of our finding that Plaintiff violated two aspects of the Amended Settlement Conference Order, the default sanction provided by Rule 16(f)(2) is an award to Amper of the fees and costs that it incurred that are attributable to Plaintiff's failures to make a written demand leading up to the January 18, 2011 deadline and his failure to report in Plaintiff's settlement memorandum that Plaintiff's demand was $150,000.  Amper identifies as the fees and expenses "needlessly incurred as a result of Plaintiff's and/or Mr. Epstein's misconduct" its expenditures for: the attorney time in communications with the Court and Amper representatives concerning the scheduling of the settlement conference;  attorney time spent in preparation of the settlement memorandum that Amper served upon Plaintiff, as well as its separate, *ex parte* submission; attorney and client time spent in preparation for the settlement conference; attorney and client time[11] spent in traveling to and from, and participating in, the settlement conference; travel and meal expenses for Saloman, who works out of a Newark, New Jersey office; and attorney time spent preparing Amper's motion for sanctions.

In considering what "reasonable expenses" were "incurred because of" Plaintiff's "noncompliance with" Rule 16, we focus upon the reasonable and foreseeable effect of Plaintiff's failure to have served her demand upon Amper by the January 18, 2011 deadline and to have stated that demand in the memorandum that was submitted to the Court and copied to counsel on Thursday,

---

[11] Amper values the time of corporate representative Jay Weinstein, who Saloman describes as a Managing Partner, at $420 per hour, which Saloman describes as Weinstein's "normal billing rate."  We presume that rate to pertain to the amount that Amper charges to its own clients for accounting work performed for that client by Weinstein and does not reflect any charges that Weinstein in some way caused Amper to incur affirmatively.

January 27, 2011 in anticipation of the settlement conference scheduled for Tuesday, February 1, 2011. We find that Plaintiff's failure to make a demand by January 18, 2011 contributed to Amper's failure to make a good faith response to that demand, as was envisioned by the Amended Settlement Conference Order.[12]   With only stale demands and offers outstanding, it is no wonder that counsel did not engage in a discussion "regarding the parties' settlement positions," as this was to follow from Defendant's response to Plaintiff's demand.  *See* Order, Jan. 5, 2011, at 1.  Given that Defendant was otherwise quite mindful of its obligations under our Order, we believe that it would have provided a good faith response and initiated discussions about the parties' settlement positions prior to the conference if Plaintiff had put her good faith demand in writing.  More importantly, had Plaintiff put in writing in January that her demand remained $150,000, we think it reasonably likely that Amper would have questioned whether $150,000 was a "firm" or "non-negotiable" figure and that, in the ensuing discussions, it would have become apparent that Plaintiff was not willing to compromise her position and reduce her demand much further.[13]   We believe that there is a reasonable probability that such discussions would have led the parties (and particularly Amper) to conclude that further in-person discussions with the Court were not likely to prove fruitful.  Had the parties communicated this conclusion to the Court, either through a telephone conference with the

---

[12]   These requirements have a purpose and have been part of the settlement protocol utilized by this Court for over six years.  They follow upon the preliminary telephone conference that the Court has with counsel where we discuss the level of interest the parties have in settlement and determine whether a face-to-face conference with clients would be useful and, if so, what the timing of such a conference should be.

[13]   Again, we do not find it necessary to judge the reasonableness of Plaintiff's valuation of this case.  We are mainly interested in the fact that, at the settlement conference, she manifested a clear rejection of any potential offer from Amper in the range of $50,000 and did not manifest any movement in her position in response.  As set out in her submission, she viewed her potential recovery as more than five times greater than her $150,000 good faith settlement demand.

Court or via their memoranda in mid- or late-January, the in-person conference for February 1, 2011 could have been canceled and further resources not deployed — by the parties or the Court — in pursuit of settlement at this stage of the litigation.[14]

Contrary to Plaintiff's assertion, then, we find that Plaintiff's conduct did impede the Court-sponsored settlement process. *Cf.* Pl. Mem. at 16 (asserting that "Plaintiff's failure to formally restate her offer of settlement to Defendant just prior to the mediation did not impede that process . . ."). We find that the failure to be more explicit about Plaintiff's demand as the parties embarked upon Court-sponsored and agreed-to settlement discussions contributed to unnecessarily expended expenses for Saloman's "preparation for settlement conference," "travel to/from and attendance at settlement conference," and "costs of travel to/from Philadelphia [from his office in Newark New Jersey] for settlement conference." (Saloman Decl. ¶ 23.)[15] We do not find Weinstein's lost billing opportunity as an accountant for the six hours he spent preparing for and participating in the conference, in his capacity as Managing Partner for Amper, to fall under the umbrella of "reasonable

---

[14] Plaintiff contends that her "failure to formally restate her offer of settlement to Defendant just prior to the mediation did not impede that process, is not evidence that her participation in the mediation was 'in bad faith,' and is far from the type of egregious conduct that would warrant sanctions under any of the theories argued by Defendant." (Pl. Mem. at 16.). As our discussion above demonstrates, we do not base our sanction of Epstein on any "bad faith" attributable to Snydman. We do, however, find that Epstein's failure to formally restate Plaintiff's demand just prior to the February 1, 2011 settlement conference did "impede" the process in that it contributed to a situation in which, instead of meeting to resolve the case without further expenditures and dissipation of resources on litigation costs, the defendant instead just incurred more costs, and when there was little prospect of any return on investment in the time spent pursuing a settlement.

[15] We find that Amper's counsel would have expended time in "communication[s] with the Court and Amper concerning scheduling of settlement conference" regardless of whether, closer to the date of the scheduled conference, it became apparent that it should not go forward. We also find that Amper would likely have invested some time in preparing its settlement memoranda before the point in time at which we think it would have become apparent that it would not be fruitful to proceed to the in-person settlement conference.

18

expenses . . . incurred" by Amper and do not otherwise find it appropriate to tax such costs upon Plaintiff. We also do not find Rule 16(f)(2) to contemplate the "reasonable expenses . . . incurred because of noncompliance" to encompass attorneys' fees associated with the request for Rule 16(f) sanctions, nor do we otherwise exercise our discretion to sanction Plaintiff in that manner. Therefore, we find that the reasonable expenses that were "incurred because of [Plaintiff's] noncompliance with" Rule 16, and specifically our Amended Settlement Conference Order of January 5, 2011, are: $1,800 in Saloman's time preparing for the conference, $2,925 in Saloman's time traveling to and attending the conference, and $264.18 in Saloman's travel costs, which totals $4,989.18. Inasmuch as we are not in a position to determine the level of culpability for these violations between Snydman and Epstein, we will hold them to be jointly and severally liable.

In considering this question of sanctions under the authority of Rule 16, however, we must be mindful of what is "just." This concept is incorporated into both Rule 16(f)(1), which authorizes the court to issue "any just orders" for failure to obey pretrial order, and Rule 16(f)(2), which directs the court to order payment of expenses incurred due to noncompliance with an order except, *inter alia*, where circumstances would make such sanction "unjust."[16] In determining whether sanctions pursuant to Rule 16(f)(2) might be unjust, a court considers "the degree of the sanction in light of the severity of the transgression which brought about the failure to comply." *Tracinda Corp. v. DaimlerChrysler AG*, 602 F.3d 212, 241 (3d Cir. 2007). "Certainly, whether a failure to [comply

---

[16] Rule 16(f)(2) also contemplates a reduction in the sanction where "the noncompliance was substantially justified." The Third Circuit has explained that substantial justification exists where there is a "genuine dispute concerning compliance." *Tracinda Corp. v. DaimlerChrysler AG*, 602 F.3d 212, 241 (3d Cir. 2007). We do not find the fact that Plaintiff had communicated a demand upon Defendant some six months earlier to have "substantially justified" its noncompliance with the portion of our Order that directed a demand to be put in writing on or before January 18, 2011. There is simply no genuine dispute here concerning Plaintiff's noncompliance with our Order.

with Rule 16] is intentional, negligent, or inadvertent is a significant factor in assessing the severity of the transgression." *Id.*

We therefore consider whether a diminution of a sanction is appropriate under Rule 16(f)(2). We find that Defendant shares some of the responsibility for the failure to have discovered that the parties' positions rendered further settlement discussions futile.   When Plaintiff failed to communicate her demand by January 18, 2011, Defendant did not reach out to Plaintiff in any effort to resuscitate — or even ascertain — the prospects of settlement.   Amper remained mum, simply preparing its own memorandum for the January 27th deadline, despite the fact that our Order required it "to initiate a discussion with [Epstein] regarding the parties' settlement positions."   As a result of the inertia of both parties, then, it did not become apparent until the conference that, while Plaintiff was willing to compromise her case from the $800,000-plus damages calculation set out in her Mediation Statement, she apparently was strongly committed to a number that Amper was not willing to meet.   In light of Defendant's share of responsibility for this situation not coming to light until February 1, 2011, we will reduce by one-third the reasonable expenses figure upon which our sanction will be based, from $4,989.18 to $3,326.09.

An appropriate Order follows.